**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BONESTINE JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-1013 |
| | § | |
| MARTHA N. JOHNSON, | § | |
| ADMINISTRATOR, GENERAL | § | |
| SERVICES ADMINISTRATION | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Bonestine Johnson sued her employer, the General Services Administration ("GSA"), alleging discrimination based on her race, sex, and age.  She also alleged retaliation for her complaints of discrimination and related activity.  (Docket Entry No. 1).  Johnson's specific discrimination claims were that GSA failed to consider her for a promotion she applied for, failed to give her proper notice that she would not be interviewed for that promotion, and failed properly to consider her for promotion to a position that later became available.  Johnson also alleged that GSA discriminated or retaliated against her by failing to give her advance consideration for a comparable position months later and by failing to give her a promised work assignment.  Finally, Johnson alleged retaliation in the cancellation of her GSA travel credit card.  GSA moved for summary judgment on all claims.  (Docket Entry No. 19).[1]

Based on the pleadings, the summary-judgment evidence, the parties' submissions, and the relevant law, this court grants GSA's motion in part and denies it in part.  Summary judgment is

---

[1] Johnson responded,  (Docket Entry No. 23);  GSA replied,  (Docket Entry No. 25); and Johnson surreplied, (Docket Entry No. 27).

granted as to Johnson's claims that she did not receive proper notice of ineligibility for promotion, did not receive advance consideration for a fourth vacant position she could have sought, had a work assignment cancelled, and had her GSA credit card cancelled.  Summary judgment is denied as to Johnson's claims that she was not genuinely or properly considered for the promotions she sought.

The reasons for these rulings are set out below.  A status conference is set for **February 25, 2013**, at 8:30 a.m. in Courtroom 11-B.

## I.    Background

This case originates from three administrative Equal Employment Opportunity ("EEO") complaints, numbers 10R7PBSBJ6 (referred to as "EEO Case 1"), 11R7CPOBJ2 ("EEO Case 2"), and 11R7PBSBJ8 ("EEO Case 3").  The summary-judgment evidence as to these cases, and as to other relevant facts, includes the documents relating to the vacant positions Johnson applied to fill.[2] The evidence also includes documents relating to Johnson's complaints about her failure to receive the promotions and about what Johnson perceived as retaliation for complaining.[3]  The parties have

---

[2]   These include Docket Entry No. 20, Exhibit 1 (December 19, 2010 Notification of Personnel Action Form for Bonestine Johnson); Exhibit 9 (December 6, 1989 Notification of Personnel Action for Bonestine Johnson); Exhibit 10 (Realty Services Specialist (Transaction Management) Job Announcement);  Exhibit 11(Johnson's Application for Transaction Manager Position); Exhibit 13 (Johnson's Applicant Job Tracking History); Exhibit 14 (GS-12 Applicant List); Exhibit 15 (GS-13 Applicant List);  Exhibit 16 (Noncompetitive Referrals and GSA Merit Promotion (Competitive) Referrals); Exhibit 19 (Selection Certificate); Exhibit 22 (April 21, 2010 GSA Merit Promotion (Competitive) Referral for Houston); Exhibit 20 (March 22, 2010 E-Mail to Johnson); Exhibit 23 (Consensus Group Ratings); Exhibit 24 (Selection Certificate); Exhibit 28 (excerpts of the resumes of the applicants selected for the positions, Joseph Fuentes, Ryan Lindberg, and Gregory Trimble); and Exhibit 29 (excerpts of November 30, 2007 GSA-AFGE National Agreement).

[3]   The exhibits relating to Johnson's complaints include Exhibit 2 (April 23, 2010 Initial Complaint Contact Worksheet); Exhibit 3 (December 3, 2010, August 31, 2010, and August 13, 2010 Acceptance Letters and July 26, 2010 Formal Complaint of Discrimination (EEO Case 1)); Exhibit 4 (June 24, 2011 Letter from GSA to Johnson); Exhibit 5 (January 11, 2011 Letter from GSA to Johnson); Exhibit 6 (March 4, 2011 Acceptance Letter and February 24, 2011 Formal

2

also submitted excerpts of depositions given in this case, including by Donna Robinson (a GSA Human Resources Specialist); Kathleen Phelps (a GSA Selecting Official); Julie Jensen (the GSA Human Resources Director for the region Johnson worked in); Loree Mickenhime (a GSA Human Resources Assistant); Cynthia Schneider (a GSA Selecting Official); Jan Trevino (a GSA Reviewing Official); Donna King (the GSA Fort Worth, Texas Office Branch Chief); and Bonestine Johnson.[4] Finally, the record includes a declaration by Cassandra Trotter (the GSA employee who was involved with the cancellation of Johnson's travel card).[5]

### A.   EEO Case 1

Johnson works for GSA as a Federal Space Management Specialist in Houston, Texas. (Docket Entry No. 20, Ex. 1).  In January 2010, Johnson applied for promotion to a position as a Realty Services Specialist (Transaction Manager) (the "Transaction Manager" position).  The vacancy was posted in six cities, including Fort Worth, Albuquerque, New Orleans, Dallas, Austin, and Houston.  (Docket Entry No. 20, Exs. 10, 11).  Johnson filled out an online multiple-choice eligibility questionnaire.  Under GSA's online hiring system, each questionnaire filed was first scored to determine whether the applicant was qualified to be referred to the selecting officials.  The scoring was based on predetermined weights for each response.  A Human Resources Specialist then

---

Complaint of Discrimination (EEO Case 2)); Exhibit 7 (June 10, 2011 Letter and August 17, 2011 Formal Complaint of Discrimination (EEO Case 3)); Exhibit 8 (November 25, 2011 Letter Dismissing EEO Case 3).

[4]   The deposition excerpts are Exhibit 12 (excerpts of deposition of Donna Robinson); Exhibit 17 (excerpts of deposition of Kathleen Phelps); Exhibit 18 (excerpts of deposition of Julie Jensen); Exhibit 21 (excerpts of deposition of Loree Mickenhime); Exhibit 25 (excerpts of deposition of Cynthia Schneider); Exhibit 26 (excerpts of deposition of Jan Trevino); Exhibit 27 (excerpts of deposition of Donna King); and Exhibit 30 (excerpts of deposition of Bonestine Johnson).

[5]   Exhibit 31 (declaration of Cassandra Trotter).

compared the responses to the supporting documents (such as resumes, transcripts, and any certifications).  A qualifying score was coded as BQ (Best Qualified) or BQNC (Best Qualified Non Competitive).  A BQNC candidate was one who already held the pay grade for the position he or she applied.  An applicant with a BQNC score was not viewed as seeking a promotion.  (Docket Entry No. 20, Ex. 12, at 16–18).

Johnson's score on the questionnaire made her eligible for the position she sought.  The Human Resources Specialist, Donna Robinson, changed Johnson's status from new applicant to BQ on February 9, 2010, meaning that Johnson would be referred to the selecting officials for an interview, along with the other applicants who obtained a BQ or a BQNC status.  (Docket Entry No. 20, Ex. 13).

Fifteen applicants, including Johnson, achieved BQ and/or BQNC status and were supposed to be referred to the selecting official for an interview.  Such referrals were done by certificates that were electronically sent to the selecting official.  There were supposed to be two referral certificates generated for each of the six cities in which the job was posted.  One certificate was for the BQ, or competitive, applicants, for whom the position would be a GS-level promotion.  The other certificate was for the BQNC, or noncompetitive, applicants, for whom the position would not be a GS-level promotion.  (Docket Entry No. 20, Ex. 12, at 20, 32).  An applicant with BQ status would be listed on the Merit Promotion (Competitive) Referral Certificate for each of the six cities in which he or she applied.  An applicant with BQNC status would appear on the Noncompetitive Referral Certificate for each of the cities.  If an applicant was both BQ and BQNC, he or she would appear on both the Merit Promotion (Competitive) and Noncompetitive Referral Certificates for each city in which he or she applied.

What was supposed to happen did not.  Instead, the twelve referral certificates included two Noncompetitive Referral Certificates and no Merit Promotion (Competitive) Referral Certificate for Houston.  (Docket Entry No. 20, Ex. 16).  Instead of generating a Merit Promotion (Competitive) Referral Certificate on February 9, 2010, GSA generated another Noncompetitive Referral Certificate with a GS-13 level noncompetitive candidate on it — Tyrone Miller — who was not on the Noncompetitive Referral Certificate generated on February 5, 2010.  (Docket Entry No. 20, Ex. 12, at 37–39, 55).  The omission of the Houston Merit Promotion (Competitive) Referral Certificate went unnoticed at the time.

The interviews of 13 of the 15 candidates — all of those other than Taiyee Coleman and Bonestine Johnson — who should have been referred to the Selecting Officials took place between February 9 and March 11.  The interviews were before a panel made up of Selecting Officials Donna King, Dennis Miller, and Kathleen Phelps.  (Docket Entry No. 20, Ex. 17, at 33, 57, 64).  The panel assigned numerical scores to the candidates, ranking them from highest to lowest based on the panel's consensus score.  On March 11, 2010, Joseph Fuentes and Ryan Lindberg, ranked the top two candidates after the interviews, were chosen by Selecting Official Kathleen Phelps for the two open positions.  On March 15, these two candidates were approved by Jan Trevino, the Reviewing Official.  On March 17, 2010, they were offered and accepted the positions, and on March 28 began their new jobs.  (Docket Entry No. 20, Ex. 19).

When Donna Robinson changed Johnson's status from new applicant to BQ on February 9, 2010, GSA's online hiring system automatically sent an e-mail to Johnson with that information.  The e-mail told her that she would be referred to the Selecting Officials for an interview.  (Docket Entry No. 20, Ex. 12, at 46–47).  The failure to generate and transmit the Houston Merit Promotion (Competitive) Referral Certificate meant that the interview was never arranged.  On March 22,

5

shortly after Fuentes and Lindberg were chosen for the two open positions, a Human Resources Assistant closed out the file.  On March 22, GSA's online hiring system automatically notified Johnson that she did not meet the BQ score and that she would not be referred for an interview. (Docket Entry No. 20, Ex. 20; Ex. 21, at 11–12).  Because she knew from the February 9 e-mail that she had made the BQ score and was supposed to be referred for an interview, Johnson suspected something had gone wrong when she received the March 22 e-mail.  She contacted GSA's EEO office on April 5 stating that she had been "[d]enied an opportunity to compete for the position." (Docket Entry No. 20, Ex. 2).  The EEO office, in turn, contacted Donna Robinson, the Human Resources Specialist, to notify her — without using Johnson's name — that an applicant who should have been referred for an interview had not been.  (Docket Entry No. 20, Ex. 12, at 30).

Although the two original positions had been filled, GSA decided that they would hire a third Transaction Manager.  Donna Robinson talked to Julie Jensen, the Human Resources Director for GSA Region 7, about what had happened with Johnson's application.  (Docket Entry No. 20, Ex. 12, at 43; Ex. 18, at 36–37).  Robinson "went into the system to look at all the certs and noticed that [Johnson's] name along with another person's name was left off," so she "amended that cert and reissued it to the selecting official."  (Docket Entry No. 20, Ex. 18, at 30).  The Houston Merit Promotion (Competitive) Referral Certificate was amended and reissued on April 21, 2010.  The amended certificate included Taiyee Coleman's, Bonestine Johnson's, and Tyrone Miller's names. Miller had already been interviewed because he was originally on the noncompetitive as well as the competitive list.  (Docket Entry No. 20, Ex. 22).  Taiyee Coleman and Bonestine Johnson were interviewed for the third position.  Their scores were integrated into the original spreadsheet with the other candidates — excluding Fuentes and Lindberg, who had received the first two positions — and the rankings were redone.  Greg Trimble, who had originally been ranked third for the first

6

two positions, ended up being ranked first for the third position.  Johnson was ranked fifth for the third position.  (Docket Entry No. 20, Ex. 17, at 71–72; Ex. 23).  On April 27, 2010, the Selecting Official, Cynthia Schneider, chose Trimble for the third position, and Jan Trevino, the Reviewing Official, approved.  (Docket Entry No. 20, Ex. 24).

Johnson's first contact with the EEO about these actions was on April 23, 2010, when she submitted an initial complaint worksheet about the failure to have her name submitted for the first two open positions.  (Docket Entry No. 20, Ex. 2).  She filed a formal complaint — EEO Case 1 — on June 26, 2010, alleging that she had not been chosen for one of the Transaction Manager positions based on discrimination.  Johnson also alleged that as of June 1, 2010, her supervisors had cancelled a work detail that she had been promised, in retaliation for her complaints about the Transaction Manager position application process.  In a July 26, 2010 letter, Johnson complained that no EEO counselor had yet been assigned to her.  (Docket Entry No. 20, Ex. 3).

An EEO officer initially accepted the complaints on August 13, 2010.  (*Id.*)  On August 31, 2010, the EEO officer amended the agency's response to accept in part and dismiss in part Johnson's claims.  The following claim was accepted:

> Whether you were discriminated against based on your age (DOB XXXX-1958), your race (African American), sex (female), and retaliation (prior EEO activity) when you were not selected for the Transaction Management position under vacancy announcement number 1007038DRMP.

(*Id.*)

The EEO dismissed as untimely Johnson's claim about retaliatory cancellation of the work detail.  Johnson knew by June 1 that she would not receive the work detail, but did not contact the EEO Office until July 26.  The EEO Officer dismissed this claim because Johnson failed "to contact the Office of Civil Rights for informal counseling within 45 days from the date of the incident or

[to] present sufficient reasons for the agency to extend the time limits." (*Id.* at 3).  EEO Case 1 was dismissed on June 24, 2011, before a hearing or a final decision, as a result of Johnson filing this action on March 17, 2011.

### B.    EEO Case 2

In EEO Case 2, Johnson complained that she was entitled to, but denied, advance consideration for open positions.  She relied on Article 18, Section 5 of the November 30, 2007 National Agreement between GSA and the American Federation of Government Employees (AFGE).  The relevant language states:

> An employee who would have been referred but was not given proper consideration due to a procedural violation or error in a previous competitive placement action, must be given advanced consideration for the next vacancy which becomes available in the same occupational family as the position denied.  This means that the employee must be referred to the selecting official for consideration before using the competitive procedures.

(Docket Entry No. 20, Ex. 29).

Johnson complained that she should have received advance consideration for the third Transaction Manager position that she was interviewed for, but which Trimble received.  Johnson also complained that she was not considered for a later position as a Realty Services Specialist, which Johnson believes was within the same "occupational family" as the Transaction Manager position.  The posting for the Realty Services Specialist position closed on November 3, 2010. Johnson admits that she did not apply for that position.  (Docket Entry No. 20, Ex. 30, at 45).

On January 11, 2011, Johnson wrote a letter to GSA's Office of Civil Rights to complain that GSA discriminated and/or retaliated against her by not giving her proper advance consideration for either the Transaction Manager or the Realty Services Specialist position.  (Docket Entry No. 20, Ex. 5).  On February 24, 2011, Johnson filed her formal complaint — EEO Case 2 — based on these

allegations.  (Docket Entry No. 20, Ex. 6).  The EEO Officer accepted the following issue for investigation:

> Whether you were discriminated against based on your age (DOB XXXX-1958), your race (African American), your sex (female) and retaliation (prior EEO activity) when you were denied priority consideration for a Realty Services Specialist . . . under vacancy number 1107007DMMP.

(*Id.*)  EEO Case 2 was dismissed on June 24, 2011, before a hearing or a final decision, as a result of Johnson filing this action.

### C.      EEO Case 3

In EEO Case 3, Johnson alleged that GSA discriminated and retaliated against her when it canceled her government-issued travel credit card.  Johnson was traveling in Fort Worth, Texas for work in February 2011 when she realized that her travel credit card had been canceled.  She had to make other arrangements for her travel expenses but was ultimately reimbursed.  By the next work-related trip, GSA had replaced her travel card.  Johnson complained informally about the card cancellation in a June 10, 2011 letter to GSA's Office of Civil Rights.  On August 17, 2011, Johnson filed a complaint based on the cancellation.  (Docket Entry No. 20, Ex. 8).

The GSA employee responsible for the cancellation, Cassandra Trotter, was contacted in the investigation.  Trotter worked in Fort Worth, Texas and did not know Johnson.  In February 2011, during an audit, Trotter discovered that Johnson's purchase card — not her travel card — was supposed to have been cancelled but had not been.  When Trotter went onto the computerized card-cancellation system, however, she mistakenly selected Johnson's travel card and canceled it.  (Docket Entry No. 31, Trotter Decl.).  EEO Case 3 was dismissed on November 25, 2011, before a hearing or final decision, after Johnson amended this action to include a claim based on the card cancellation.

### D.      The Complaint in This Lawsuit

Johnson's amended complaint alleged that GSA discriminated against her on the basis of race, age, sex, and a prior EEO filing when, (1) after being "advised that she was qualified and/or otherwise eligible to be interviewed" for a position she sought, her name was not forwarded for an interview, (2) she "was granted a sham interview" after filing an EEO complaint concerning number 1, (3) she was "denied priority consideration for a [subsequent] position" in the same family, and (4) her "government issued travel credit card [was] cancelled without notice."  Johnson sought "advance consideration for the next vacancy . . . back pay, front pay, pre and post judgment interest . . . costs and expenses . . . including reasonable attorney fees."  (*Id.*, ¶¶ IV, X).

GSA moved for summary judgment on the following grounds:

- Johnson's claims necessarily failed because the failure to submit her name for a promotion and the card cancellation resulted from bona fide errors, not discrimination or retaliation.

- GSA gave Johnson the consideration she was entitled to receive.

- Johnson had no evidence raising a fact issue as to pretext or discriminatory or retaliatory motive.

(Docket Entry No. 19).

Johnson responded that GSA's "error" justifications could not credibly explain the multiple mistakes.  Johnson also argued that GSA had failed to address three additional claims that she believed were in the suit: the improper notification that she was ineligible for the Transaction Manager position, the failure to give her advance consideration for the Realty Services Specialist opening that closed in November 2010, and the cancellation of her work detail.  (Docket Entry No. 23).

10

As to these additional claims, GSA replied that they also failed because:

•       GSA had a legitimate justification for each alleged action and Johnson did not raise

      a fact dispute as to pretext or discriminatory or retaliatory motive.

•       The work-detail claim was barred because the EEO had dismissed it as untimely

      during the administrative-review process.

(Docket Entry No. 25).  Johnson surreplied.  (Docket Entry No. 27).

The parties' arguments and responses are addressed below.

## II.    The Summary-Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case.  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response."

11

*United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

## III.   Analysis

### A.   The Legal Standards for Discrimination and Retaliation Claims

A plaintiff may prove employment discrimination or retaliation with either direct or circumstantial evidence. *Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 992 (5th Cir. 2005); *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414–15 (5th Cir. 2003), *overruled on other grounds by Smith v. Xerox Corp.*, 602 F.3d 320, 330 (5th Cir. 2010). Johnson does not assert direct evidence that GSA discriminated or retaliated against her. *See Fabela*, 329 F.3d at 415. Johnson's case relies on circumstantial evidence. Her discrimination and retaliation claims are evaluated under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Evans v. City of Houston*, 246 F.3d 344, 349, 352 n.6, 352–55 (5th Cir. 2001); *Long v. Eastfield Coll.*, 88 F.3d 300, 304–05 (5th Cir. 1996); *see also Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998) (noting that *McDonnell Douglas*'s burden shifting applies to both discrimination and retaliation claims); *Septimus v. Univ. of Hous.*, 399 F.3d 601, 607–08 (5th Cir. 2005) (applying the *McDonnell Douglas*

framework in a Title VII retaliation case); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005) (applying the *McDonnell Douglas* framework in an age-discrimination case)).

In a Title VII discrimination or retaliation case, under the *McDonnell Douglas* framework, "the plaintiff must first demonstrate a prima facie case of discrimination." *Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 411–12 (5th Cir. 2007). To state a prima facie case of discrimination under Title VII, the plaintiff must show that she (1) is a member of a protected class, (2) was qualified for the position, (3) was subject to an adverse employment action, and (4) was replaced by someone outside the protected class or, in the case of disparate treatment, show that others similarly situated were treated more favorably. *Bouie v. Equistar Chems. LP*, 188 F. App'x 233, 236–37 (5th Cir. 2006); *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001). "To establish a prima facie case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007) (citing *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)). The elements of a prima facie showing in an age-discrimination case are that "(1) [the plaintiff] was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).

If the plaintiff makes a prima facie showing, the defendant "must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff." *Burrell*, 482 F.3d at 411–12. "The defendant must clearly set forth, through the introduction of admissible evidence, reasons for

its actions which, 'if believed by the trier of fact,' would support a finding that unlawful discrimination was not the cause of the employment action." *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999) (emphasis omitted); *Marcantel v. Dep't of Transp. & Dev.*, 37 F.3d 197, 199 (5th Cir. 1994) (noting that the employer bears only the burden of producing evidence which explains clearly that the employment decision was not pretextual but was motivated by a legitimate, nondiscriminatory reason, for example, a business judgment). In Title VII and retaliation cases, "if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. *Burrell*, 482 F.3d at 412 (internal quotation marks omitted); *see also Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (stating that if the employer sustains its burden, the prima facie case dissolves, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004))).

A plaintiff may establish pretext by showing that the employer's "proffered explanation is false or 'unworthy of credence.'" *Vaughn*, 665 F.3d at 636 (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (internal quotation marks omitted); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). An explanation is false or unworthy of credence if it is not the real reason for the employment action. *Vaughn*, 665 F.3d at 636–37. "Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination [or retaliation] even without

14

further evidence of the defendant's true motive." *Laxton*, 333 F.3d at 578. "No further evidence of discriminatory animus is required because 'once the employer's justification has been eliminated, discrimination [or retaliation] may well be the most likely alternative explanation.'" *Id.* (quoting *Reeves*, 530 U.S. at 147). As the Supreme Court explained in *Reeves*:

> the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt.

530 U.S. at 147 (internal quotation marks and citations omitted); *see also Gee*, 289 F.3d at 348 (applying *Reeves* to a Title VII retaliation claim and noting "that a factfinder may infer the ultimate fact of retaliation from the falsity of the explanation").

A plaintiff with Title VII or retaliation claims may also maintain her burden through a "mixed-motive" case. In a mixed-motive case, the employee may show that the employer's proffered reason for taking the adverse employment action, while nonpretextual, is only one of the reasons for its conduct, and that another "motivating factor" is the plaintiff's protected characteristic. *E.g.*, *Woods v. Sheldon Indep. Sch. Dist.*, 232 F. App'x 385, 387 (5th Cir. 2007) (per curiam) (citing *Rachid*, 376 F.3d at 312 (5th Cir. 2004)); *Mack v. John L. Wortham & Son, L.P.*, 2012 WL 5456117, at *6 (S.D. Tex. Nov. 7, 2012) ("[T]he plaintiff [may] establish . . . that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." (citing *Vaughn*, 665 F.3d at 636)). For age-discrimination claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, however, "the Supreme Court [has] rejected the application of Title VII's 'motivating factor' standard . . . . A plaintiff bringing an ADEA claim must prove . . . that age was the 'but-for' cause of the challenged adverse

employment action." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 928 (5th Cir. 2010) (quoting *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2345 (2009)).

**B.      Johnson's Claims**

Johnson raises the following issues:

(1) her name was not initially forwarded for an interview for one of two open positions;

(2) she was not informed that she was ineligible for the first position she sought;

(3) she was given inadequate consideration when a third position became available;

(4) she was not given advance consideration for a subsequent position;

(5) her travel card was canceled; and

(6) her work-detail assignment was canceled.

GSA concedes for summary-judgment purposes that Johnson can make a prima facie showing of discrimination and/or retaliation as to claims (1)–(5). For these claims, the burden shifts to GSA to proffer legitimate, nondiscriminatory reasons for the employment actions at issue. *See McDonnell Douglas*, 411 U.S. at 802. The burden then shifts back to Johnson to raise a factual dispute as to pretext or to GSA's mixed motives, as appropriate.

For claim (6), GSA argues that it is not viable because the EEO dismissed it as untimely and, alternatively, that it would fail on the merits as a matter of law. This claim is addressed separately below.

**1.      The Claim Based on the Failure to Forward Johnson's Name for an Interview**

GSA's proffered nondiscriminatory reason for not referring Johnson's name for an interview is to acknowledge error. GSA claims that an "unintentional computer-generat[ed] glitch caused the Houston Merit Promotion (Competitive) Referral list, and thus Taiyee Coleman's and Johnson's names, not to be referred for interviews"; "Donna Robinson, the Human Resources Specialist who

made the error, was not even aware of Johnson's race or prior EEO activity at the time the error was made."  (Docket Entry No. 19, at 22 (citing Ex. 12, at 29, 37–39, 55; Ex. 18, at 38–39)).  GSA argues that summary judgment is proper on this claim because Johnson has neither submitted nor identified evidence controverting this explanation, other than her own subjective belief that she was the victim of discrimination or retaliation.

In general, "the mere failure of a company's employees to follow their employer's manuals and written directives, without more, does nothing to suggest discrimination as opposed to perhaps, say, laxity on the part of company employees."  *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1199 (10th Cir. 2008).  "The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent . . . ."  *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995) (emphasis omitted).  "Proof that an employer did not follow correct or standard procedures in the termination or demotion of an employee . . . . may well be unfair or even unlawful yet not be evidence of" discrimination.  *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 819 (5th Cir. 1993) (footnote omitted).

Courts have found that administrative errors or mistakes can be legitimate, nondiscriminatory reasons for an employer's actions.  Some courts have granted summary judgment based on evidence that such errors led to the challenged employment decision.  *Kidd v. MBNA Am. Bank, N.A.*, 93 F. App'x 399, 401 (3d Cir. 2004) (affirming summary judgment in favor of an employer and finding that the employer's mistake in forgetting to check the qualification status of the promoted employee was a legitimate nondiscriminatory business reason); *Leigh v. Bureau of State Lottery*, 1989 WL 62509, at *5–6 (6th Cir. June 13, 1989) (per curiam) (affirming summary judgment in favor of an employer based on an administrative error showing that the promoted employee was qualified); *Williams v. Potter*, 331 F. Supp. 2d 1331, 1345 (D. Kan. 2004) (granting summary judgment based

17

on a finding that the employer's mistake in initially determining that the plaintiff did not qualify for the position was a legitimate nondiscriminatory reason for the challenged employment decision).

Within this circuit, at least one court has held that summary judgment was improper because a professed administrative error could not eliminate an inference that the defendant manufactured or exploited the error to achieve discriminatory ends. In *Blow v. City of San Antonio*, 236 F.3d 293 (5th Cir. 2001), a city's policy was to give preferential consideration to internal applicants who were underrepresented minorities. The plaintiff, a librarian, intended to apply for a job opening as a senior librarian. Another applicant — neither an internal candidate nor an underrepresented minority — also wanted to apply for the senior position, but his application was misclassified by city personnel in February 1997 as an application for an entry-level position. *Id.* at 295. City personnel realized the mistake and forwarded the application directly to the hiring officials. As a result, the applicant  bypassed the city's applicant-ranking process that gave minorities preferential consideration. The hiring officials interviewed this applicant in March 1997. Shortly thereafter, one of the hiring officials told the plaintiff that the appropriate time had come for her to apply. After receiving approval from their department head, however, the hiring officials offered the job to the other applicant in April 1997. At the end of April, the city's personnel department issued an "eligibility list" for the position. The plaintiff's name was at the top of the list, but because the selection had already been made, the plaintiff was not considered for the position. *Id.* The district court granted summary judgment based on the city's proffered nondiscriminatory explanation that the plaintiff did not file her application in time for it to be considered because, by the time hiring personnel received her application, the job was already filled. *Id.* at 296. The Fifth Circuit reversed on the ground that the evidence could fairly show that the hiring officials induced, or at least exploited, the error misclassifying the applicant's application. This error allowed the hiring officials

to delay soliciting applications from, or considering, internal applicants such as the plaintiff, who would have been given preferential treatment as underrepresented minorities. *Id.* The district court's reasoning did not comply with *Sanderson Plumbing* because there was evidence that could show that "hiring [the applicant] without considering other candidates reflected an intentional and deliberate departure from stated policies that necessarily had the effect of ensuring that [the plaintiff] would not be hired." *Id.* at 297.

In the present case, it is undisputed that GSA made a mistake by not forwarding Johnson's name among those to be interviewed. GSA asserts that the mistake was caused by a computer "glitch." (Docket Entry No. 19, at 22). There is record evidence to support this argument. But there is also evidence inconsistent with this position. GSA relies on Donna Robinson's deposition testimony. But she testified that Johnson was coded "BQ," and that "anybody who is coded BQ would be sent to the selecting official." (Docket Entry No. 20, Ex. 12, at 29). When asked, "[W]hat would cause it not to be sent to the selecting official?," Robinson replied, "I have no idea. . . . I don't know . . . why someone would not be referred if they were coded BQ." (*Id.*) When asked, "So what you're saying is if someone is coded BQ and they're not certified to the selecting officials that's something over which you had no control; is that what you're saying?," Robinson replied, "Yes, I would say that. Yes, that *if there's a glitch* in the system I was not aware of it." (*Id.* at 29–30 (emphasis added)). Robinson's testimony does not show that there *was* a glitch. Instead, her testimony shows only that if there was a glitch, Robinson did not know that it had happened, why it happened, or whether others knew about it at the time.

GSA also relies on Julie Jensen's testimony to establish that the mistake was unintentional error. Jensen testified that Johnson had been erroneously left off the BQ list of candidate referrals. (Docket Entry No. 18, at 38). When asked, "How did you know it was erroneous?," Jensen replied,

"Because Donna [Robinson] explained to me that Bonestine was best qualified.  But when she issued the certificates for all six geographical locations, *she made an error* and failed to issue a certificate for the best qualified GS13 competitive certificate for Houston, Texas."  (*Id.* at 38–39 (emphasis added)).  When asked, "So . . . you concluded that it was erroneous based on what Donna told you?," Jensen responded, "Yes, it was a *human* error."  (*Id.* at 39 (emphasis added)).  Jensen did not testify that a computer glitch caused Johnson's name to be not to be forwarded.

The present record does not present undisputed evidence that allows this court to conclude, as a matter of law, that a computer glitch caused Johnson's name not to be forwarded.  *See, e.g.*, *Blow*, 236 F.3d at 297 ("There is some support for the district court's interpretation of the facts, but under Rule 56, it must be the only reasonable interpretation.").  Robinson  testified that she "hadn't had any problems with the computer."  (Docket Entry No. 20, Ex. 12, at 32).  Jensen testified that the mistake was caused by human — not computer — error.  The undisputed evidence before this court is that GSA does not know why Johnson's name was not forwarded.  This "is the logical and legal equivalent of proffering no reason for the omission."  *Prudencio v. Runyon*, 986 F. Supp. 343, 350 (W.D. Va. 1997).  "'[N]o reason' cannot serve as a 'legitimate, nondiscriminatory reason.'"  *Id.*  Summary judgment must be denied as to this claim.

### 2.  The Claim that Johnson Was Not Informed That She Was Ineligible

This claim is based on the notification Johnson received after the first two Transaction Manager candidates were selected.  Johnson was notified initially that her preliminary questionnaire scores made her eligible for the Transaction Manager position.   After GSA hired two other applicants, and after Johnson's name had been omitted from the certificates submitted for consideration, she received a notice that she was ineligible for the position.  Johnson alleges that "Donna Robinson failed to follow established procedures again as she was also responsible for

20

notifying any employee who was determined to be ineligible prior to sending out the best qualified list of applicants to the selecting officials." (Docket Entry No. 23, at 7–8).  GSA contends that the notice of ineligibility was generated automatically, as soon as a hire had been made, for an applicant whose name had not been submitted to the selection officials.  "[B]ecause she was never referred to the selecting official for an interview — as a result of the failure to generate and transmit the Houston Merit Promotion (Competitive) Referral Certificate — as soon as Joseph Fuentes and Ryan Lindberg were chosen for the two open positions and the Human Resources Assistant closed out the file on March 22, 2010, GSA's online hiring system automatically notified Johnson that she did not meet the BQ score and that she was not referred for an interview."  (Docket Entry No. 19, at 10 (citing Ex. 20; Ex. 21, at 11–12)).

GSA's explanation is supported by the uncontroverted summary-judgment evidence.  The undisputed evidence is that GSA's computerized hiring system generated the notice automatically when Johnson was not selected for one of the two positions.  This is a legitimate, nondiscriminatory explanation.  The parties disagree about *why* Johnson's name was not submitted for an interview, and this court has already determined that there are fact disputes as to that issue.  But it is undisputed that when Johnson was neither submitted for an interview nor hired, GSA's computer system automatically — though inaccurately — notified her that she was "ineligible" for the position. Johnson has not identified or presented evidence that would raise a factual dispute that this explanation is pretextual.  She argues that GSA's explanations in general are unworthy of credence, but there is no competent summary-judgment evidence that would tend to show that a GSA staff person exercised discretion or control over whether or how the notice was generated.  Nor does Johnson identify or submit evidence that would tend to show that the failure to inform her was motivated, in whole or in part, by discrimination.  She offers only her subjective belief that the

21

reason she did not receive the proper notice was discrimination.  Such subjective beliefs are an insufficient basis to support an inference of, or raise a factual dispute about, pretext.  *See Grimes v. Tex. Dep't. of Mental Health & Mental Retardation*, 102 F.3d 137, 139-140 (5th Cir. 1996) (noting that "unsubstantiated assertions are not competent summary judgment evidence" and that "the non-moving party [must] present evidence-not just conjecture and speculation-that the defendant retaliated and discriminated against" her); *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) (noting that summary judgment is proper where non-moving party does not provide sufficient evidence to support her subjective opinion).

A broad, generalized statement that the plaintiff received less favorable treatment than those outside the protected class is insufficient to create a fact dispute as to disparate treatment or discrimination.  *See Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1186 (5th Cir. 1997) ("Without testimony of the circumstances, or without examples of blacks who were scrutinized while similarly-situated whites were not, a broad, generalized statement that black employees were 'watched' more closely than whites is incompetent to establish a pattern of discrimination.").  No matter how genuine, a plaintiff's subjective belief that she suffered discrimination or retaliation, without supporting evidence, is insufficient to create a triable fact dispute.  *See, e.g.*, *Pennington v. Tex. Dep't of Family & Protective Servs.*, 469 F. App'x 332, 339 (5th Cir. 2012) (holding that a subjective belief of retaliation is insufficient alone to establish pretext); *Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993) ("[Waggoner] alleges that Hamilton and Phillips not only knew the allegations were false, but that in fact they fabricated them for the purpose of discriminating against Waggoner because of his age.  He fails, however, to produce any evidence that supports his conclusionary [*sic*] allegations."); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087–88 (5th Cir. 1994) (finding that once a defendant has articulated a legitimate reason and

supported its summary judgment motion with sufficient evidence, plaintiff cannot defeat summary judgment with naked assertions and refutations).

GSA is entitled to summary judgment on this claim.

### 3.    The Claim that Johnson Did Not Receive Serious Consideration for the Third Position

Johnson argues that the applicant initially interviewed for one of the two Transaction Manager positions and selected when the third position became available was essentially preselected for that third position.  Johnson asserts that although HR officials instructed the selecting officials to interview her for the position, the interview she received was a sham.

There is uncontroverted evidence that GSA HR personnel told the Selecting Officials that Johnson and Taiyee Coleman — whose name had also been erroneously left off the BQ list — had to be considered for the third position.  Jensen testified that "when Donna and Gary came into my office, it was a twofold discussion.  One, they wanted to inform me that Bonestine Johnson's name was left off of the competitive certificate for Houston.  They also informed me that Public Building Service wanted to make a third selection off that particular vacancy announcement."  (Docket Entry No. 20, Ex. 18, at 36).  Jensen testified that Robinson told her she had recommended readvertising the position, but that Jensen told Robinson not to:

> I informed Donna Robinson and Gary Sharp, we have to make this right for Bonestine Johnson.  Her name was erroneously left off a competitive certificate for the GS13 position, referral certificate for Houston.  And I said, we have to make it right for Bonestine Johnson.  And I'm making the decision that we will not re-advertise the position.  Because I didn't want to put the onerous [*sic*] on people who had previously applied to have to reapply for the position. . . . So I asked Donna to reissue the certificate and correct the error that had been made.

(*Id.* at 37).  Jensen denied knowing whether one member of the selection panel, Kathleen Phelps, had asked HR if they could simply hire Trimble, who had received the next-highest score after the

two candidates selected in the initial round of interviews.  (*Id.* at 37–38).  Phelps testified that Cindy Schneider, a GSA employee with control over hiring, told her that "two names were left off the list of the candidates that HR sent us to interview for the two vacancies for the Transaction Manager's position."  (Docket Entry No. 20, Ex. 17, at 26).  Phelps explained, "[W]e were going to select one more candidate off that list because of a series of events, of personnel events, so we had another slot available.  And so we had put the third candidate from the first interview on that — you know, as the next person to be selected.  We sent it forward to HR, and that's when HR told us we had left two people off the list."  (*Id.* at 27).  When asked if the selecting officials had hired Trimble even after learning that Johnson's and Coleman's names had erroneously been left off the list, Phelps testified:

> A:      And I believe I said that he was the third person on the list but when we went to HR and said, this is the person we want to select since we have one more vacancy, that's where HR told us you — there were two people, two candidates that were left off the original interview list and you need to interview those people, so that's what we did.  We interviewed Bonestine and Tyree.

> Q:      But you made it clear that y'all had already selected Trimble, though?

> A:      Well, we had selected Trimble because we didn't know that the other two had not ever been interviewed, so yes, he was the next one ranked because we ranked everyone, so he was the next one on the list, he was the third person on the list.  And so we went to HR and said, we're within the selection period where we can, off of this cert, go ahead and fill that other position, and that's when HR told us there are two people that were left off the list, you need to set up interviews, interview those people, perform it the same way as we did originally, same questions, same timeframe, everything like that, and then rank order them again and then give us your selection.

> Q:      Well, when did this third position you're talking about become available?

> A:      I want to say it was a couple of weeks after we had completed the first set of interviews and made the selections, but I don't know the exact date.

> Q:      Well, you did tell us that Trimble was interviewed when Fuentes and Ryan was interviewed?

A:      Correct.

Q:      Okay. So are you telling the jury that you interviewed Trimble again?

A:      No.

(*Id.* at 37–38).

As discussed above, the record presents disputed facts and conflicting inferences as to why GSA did not interview Johnson for one of the two original positions.  Summary judgment is similarly inappropriate as to whether Johnson was not given the appropriate consideration for the third position once it became available.  Phelps's testimony, without indulging in credibility decisions inappropriate on summary judgment, could suggest that the hiring officials were determined to hire Trimble, as the next-highest-scoring original candidate.  There is ample evidence that could support GSA's theory that Johnson was not selected for the third position because she was not the best qualified for it.  But, as in *Blow*, the evidence could also show that GSA officials had predetermined that Trimble would be hired and went through the motions of interviewing Johnson.  There are disputed facts material to determining whether Johnson was genuinely or properly considered for the position, much less whether she received the preferential consideration she claims she was entitled to.  Summary judgment is denied as to this claim.

**4.      The Claim that Johnson Did Not Receive Advance Consideration for a Subsequent Opening for a Comparable Position**

Johnson alleges that she was not given advance consideration under the AFGE National Agreement for subsequent vacancies.  This claim, as Johnson presented it originally to the EEO office, is really two claims.  The first is that GSA failed to give Johnson advance consideration for the third Transaction Manager position once it became available.  The second is that GSA failed to give Johnson advance consideration for the Realty Services Specialist position that became open

months later and closed in November 2010.  GSA argues that neither action warranted advance consideration because there was no "previous competitive placement action" that would have triggered this requirement under the National Agreement.

GSA argues that the summary judgment evidence shows that consideration for the third Transaction Manager position was part of the same competitive placement as the first two Transaction Manager positions.  As to the Realty Services Specialist position, GSA officials testified that Johnson had already received whatever consideration she was entitled to when she was interviewed for the third Transaction Manager position.  "[A]s Julie Jensen, the Human Resources Director testified, the . . . AFGE National Agreement does not apply; that is because Johnson was given consideration for a third vacancy under the same vacancy announcement for which she applied, and thus there was no 'previous competitive placement action.'" (Docket Entry No. 19, at 18 (citing Ex. 18, at 46–47)).  And Johnson neither applied for the Realty Services Specialist position nor initiated a grievance with AFGE about advance consideration for that position.  Johnson concedes both facts.  (Docket Entry No. 30, at 45).  GSA argues that it is entitled to summary judgment because Johnson has advanced no evidence of pretext or unlawful motive other than her subjective perceptions of discrimination and retaliation.

The record shows that GSA is entitled to summary judgment on Johnson's claim that GSA discriminated or retaliated against her by not giving her advance consideration for the Realty Services Specialist position.  Failure to apply for a disputed promotion will bar a "failure to promote" claim absent a showing that applying would have been futile.  *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999); *see also Grice v. FMC Techs. Inc.*, 216 F. App'x 401, 406 (5th Cir. 2007) (per curiam) (finding no prima facie showing of "failure to promote" where the employee failed to apply for the promotion at issue).  The "futile gesture" exception applies only

26

when "the applicant for the promotion was deterred by a known and consistently enforced policy of discrimination." *Shackelford*, 190 F.3d at 406.  There is no evidence of such a policy in this case.  Because Johnson concedes that she did not apply for the Realty Services Specialist position, it is not necessary to consider the effect, if any, of her failure to file a grievance with her union.  Johnson cannot raise a disputed fact issue of discrimination or retaliation based on the Realty Services Specialist position that closed in November 2010.

The record does, however, disclose disputed facts as to whether GSA gave Johnson appropriate consideration for the third Transaction Manager position when it became available.  The evidence could easily support GSA's explanation that Johnson received due consideration for the third Transaction Manager position.  But without credibility determinations, the evidence might also support Johnson's argument that GSA essentially gave her no consideration.  The conflicting inferences preclude summary judgment on the present record on Johnson's claim that she was denied the consideration she claims to be have been entitled to receive.

GSA is entitled to summary judgment as to the claim that it failed to consider Johnson for the Realty Services Specialist position, but not as to the claim that it failed to give Johnson proper advance consideration for the third Transaction Manager position.

### 5.    The Claim that GSA Cancelled Johnson's Travel Credit Card

GSA is entitled to summary judgment on this claim.  The parties do not dispute that Johnson's GSA travel credit card was cancelled in error.  The competent, undisputed evidence shows that the GSA employee responsible for Johnson's credit cards had been instructed to cancel Johnson's purchase card, but erroneously cancelled Johnson's travel card.  (Docket Entry No. 31, Trotter Decl.).  Johnson presents no evidence or argument as to why this nondiscriminatory explanation is pretextual.  She argues only a subjective belief that the "number of errors that are

27

alleged to have befallen Johnson suggest that it was anything but a coincidental error." (Docket Entry No. 23, at 39).   According to Johnson, the "evidence provided is a clear indication of purposeful actions that indicate the collusion of acts directed against Johnson that created a poisoned work environment, put at risk for physical harm, financial peril and affected her sense of trust in her management team." (*Id.*)

Johnson's evidence, however, relates to her claims about being denied proper consideration for certain positions.   Generally, "each incident of discrimination and of retaliatory employment action is a separate legally cognizable employment action." *Jackson v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 54 F. App'x 404, 2002 WL 31687699, at *3 (5th Cir. Oct. 23, 2002) (per curiam) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).   Johnson presents nothing to link the cancellation of her card to her job application, other than her own subjective belief that the two are related.   This claim fails because no reasonable juror could find that GSA discriminated or retaliated against Johnson by canceling her travel card.

### 6.     The Claim Based on the Cancellation of Johnson's Work Detail

Federal employees must initiate contact with an Equal Employment Opportunity counselor within 45 days of the date of the event or action alleged to be discriminatory.   29 C.F.R. § 1614.105(a)(1).   Failure to do so bars the claim.   *Teemac v. Henderson*, 298 F.3d 452, 454 (5th Cir. 2002).   Claims accrue when the plaintiff knows or reasonably should have known about the discriminatory event or action.   *Pacheco v. Rice*, 966 F.2d 904, 906 (5th Cir. 1992); *see also Vidal v. Chertoff*, 2007 WL 2010477, at *5 (S.D. Tex. July 6, 2007) ("Courts regularly apply § 1614.105(a)[ ] to claims of retaliation.").   If a claimant was not notified of the time limits, could not have reasonably known the discriminatory action occurred, or was prevented by circumstances beyond the claimant's control from contacting the counselor, then the 45–day limitation may be

extended.  29 C.F.R. § 1614.105(a)(2).  Extending the deadline is not proper if the plaintiff knew about the challenged conduct, even if the claimant did not know the unlawful motive behind it. *Deveaux v. Napolitano*, 2012 WL 3065431, at *2 (E.D. La. July 27, 2012) (citing *Caprio v. Peters*, 345 F. App'x 824, 827 (3d Cir. 2009)).

The EEO dismissed Johnson's work-detail complaint as untimely.  Johnson failed to complain about the alleged cancellation of the work detail within 45 days after she learned she would not receive the assignment.  Her EEO complaint, filed July 26, 2010, stated that she was denied the work detail on June 1, 2010.  (Docket Entry No. 20, Ex. 3).  In her response brief, Johnson stated that "she was immediately retaliated against, for the first time, for engaging in the protected activity which took place on or about May 13, 2010 during her mid-year performance review after being advised by her supervisor . . . that she would not be leaving for the detail." (Docket Entry No. 23, at 48).  Assuming this is true, that would mean Johnson delayed for a longer period before asserting a claim based on this act.  She has not addressed GSA's timeliness argument in any of her briefing.  (*See id.* at 47–48; Docket Entry No. 27, at 3–5).  She argues only that there are "genuine material issue[s] of fact about whether or not the aforesaid retaliation took place," (Docket Entry No. 23, at 48), and that "[w]hether retaliation was a motivating factor when Plaintiff was denied a detail assignment . . . is a question of fact."  (Docket Entry No. 27, at 3).  Johnson has neither identified nor presented any summary-judgment evidence explaining why her work-detail claim was not time barred.

Johnson has not argued that the 45-day period should have been extended.  Occasionally, untimely discrete acts may be used as background evidence for certain timely claims, such as those based on a hostile work environment.  *Nat'l R.R. Passenger Corp.*, 536 U.S. at 112.  But the "background evidence" theory does not apply to such discrete employment actions as the

cancellation of a work assignment.  *See id.* (explaining that discrete acts will not converge into "a single unlawful practice for the purpose[ ] of timely filing"); *see also Baker v. FedEx Ground Package Sys. Inc.*, 278 F. App'x 322, (5th Cir. 2008) (finding the background-evidence or continuing-violation theory of *Morgan* inapplicable to discrete acts such as the transfer to or elimination of a work shift); *Early v. Wyeth Pharms., Inc.*, 603 F. Supp. 2d 556, 572 (S.D.N.Y. Feb. 25, 2009) ("[T]he separate and discrete acts of discrimination and retaliation alleged to have occurred prior to January 2003, including verbal and written warnings, suspensions and work assignments, fall outside the scope of the continuing violations doctrine as set forth in *Morgan*.").

This claim is barred because Johnson failed to exhaust properly her administrative remedies. GSA is entitled to summary judgment on this claim.[6]

## IV.    Conclusion

GSA's motion for summary judgment is granted in part and denied in part.  It is granted as to Johnson's claims based on the failure to notify her of her ineligibility for the first two Transaction Manager positions, the failure to give her advance consideration for the Realty Services Specialist position, the cancellation of her GSA travel card, and the cancellation of her work detail.  It is denied as to Johnson's claims based on the failure to forward her name for one of the two original

---

[6] The law is unclear whether courts have the power to extend the 45–day period or whether the EEO office alone has that power, and whether a failure to complain timely is jurisdictional. *See, e.g.*, *Vidal*, 2007 WL 2010477, at *3 ("[T]here is currently within the Fifth Circuit disagreement as to whether [failure to obtain an extension from the agency is a jurisdictional bar] in Title VII suits against the federal government." (emphasis omitted)).  It is not necessary to clarify the state of the law to resolve the present dispute.  If the timeliness failure is jurisdictional, then this court lacks the power to entertain Johnson's claim and it must be dismissed.  If the failure is nonjurisdictional and is tantamount to a limitations defense, *see, e.g.*, *Teemac*, 298 F.3d at 454 (stating that failure to contact an EEO counselor in a timely fashion time-bars the claim, absent a defense of waiver, estoppel, or equitable tolling), Johnson has presented no basis to prevent GSA from relying on that defense.  GSA would be, and is, entitled to summary judgment.

Transaction Manager positions and the failure to give her proper consideration when a third Transaction Manager position became available.

A status conference is set for **February 25, 2013** at 8:30 a.m. in Courtroom 11-B.

SIGNED on February 12, 2013, at Houston, Texas.

_____

Lee H. Rosenthal

United States District Judge